COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and Chafin
Argued at Richmond, Virginia

PUBLISHED

RYAN TAYLOR

v.     Record No. 0719-18-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WILLIAM G. PETTY
APRIL 16, 2019

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Frederick G. Rockwell, III, Judge

Jaclyn Murphy Goad (Gordon, Dodson, Gordon & Rowlett, on
brief), for appellant.

Alice Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Ryan Taylor was convicted of driving under the influence, third offense, in violation of

Code § 18.2-266. Before trial, Taylor filed a motion to suppress the results of a warrantless

seizure of a sample of his blood, referred to in the trial court as the blood draw. The motion was

denied, and Taylor was subsequently convicted. On appeal, Taylor first argues that the trial

court erred in denying his motion to suppress the warrantless blood draw. Secondly, Taylor

argues that there was insufficient evidence to convict him of driving under the influence, third

offense. For the following reasons, we affirm.

BACKGROUND

We view the facts in the light most favorable to the prevailing party below, granting to it

the benefit of any reasonable inferences; we review issues of law *de novo*. Hall v.

Commonwealth, 55 Va. App. 451, 453 (2009).

Trooper William Boelt of the Virginia State Police was traveling southbound on Interstate 95 in Chesterfield County. The speed limit on that portion of Interstate 95 was 60 miles per hour, and the trooper was passed by a car traveling at 82 miles per hour. Trooper Boelt initiated a stop of the car; Taylor was the driver. Trooper Boelt noticed the smell of alcohol and marijuana coming from the car. Taylor admitted that he had been drinking and smoking marijuana "earlier." Trooper Boelt asked Taylor to step out of the vehicle and perform field sobriety tests. Taylor agreed and, as a result of his performance, was arrested for driving under the influence (DUI).

Because Taylor admitted to using both alcohol and marijuana, Trooper Boelt transported Taylor to the hospital for a blood draw. At the hospital, Trooper Boelt "read [Taylor] implied consent" from a card. Although the card was not admitted into evidence, Trooper Boelt agreed with defense counsel on cross-examination that he "informed [Taylor] that he could receive some sanction, some criminal sanction, if he did not submit to the blood draw." Taylor stated that he understood implied consent and based on that he agreed to allow a sample of his blood to be withdrawn.

After Taylor's blood was drawn, it was transported to the Department of Forensic Science for analysis. The certificate of analysis issued after the examination of the sample reflected a blood alcohol content (BAC) of .128% by weight by volume. At the time of the offense, Taylor had previously been convicted and sentenced for two DUIs.

Taylor filed a motion to suppress the results of the blood sample, alleging that a search warrant was required to obtain the sample and that any consent he gave was obtained by unconstitutional coercion. The trial court denied that motion, and the case proceeded to trial, where the trial court found Taylor guilty of DUI, third offense.

ANALYSIS

1. Motion to Suppress

Taylor argues that the results of the warrantless blood draw should have been suppressed because the United States Supreme Court's decision in Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), prohibits warrantless blood draws incident to arrest, and Taylor did not voluntarily consent to the blood draw. We disagree.

When reviewing a denial of a motion to suppress evidence, an appellate court considers the evidence in the light most favorable to the Commonwealth and "will accord the Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence." Sidney v. Commonwealth, 280 Va. 517, 520 (2010). The defendant has the burden of showing that even when the evidence is reviewed in that light, denying the motion to suppress was reversible error. Id. at 522. We review *de novo* the trial court's application of the law to the particular facts of the case. Glenn v. Commonwealth, 275 Va. 123, 130 (2008).

At the time of Taylor's arrest in this case, September 8, 2015, the law in Virginia was that

> [a]ny person, whether licensed by Virginia or not, who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266[.]

Code § 18.2-268.2. Unreasonable refusal to submit to a blood or breath test under Code § 18.2-268.2 resulted in a violation of Code § 18.2-268.3. A first offense for violation of Code § 18.2-268.3 resulted in a civil penalty of a one-year license suspension, but subsequent offenses resulted in conviction of a criminal offense and license suspension. Code § 18.2-268.3. The Virginia Supreme Court has consistently held that this statute passes constitutional muster. See

- 3 -

Shin v. Commonwealth, 294 Va. 517, 529-30 (2017); Walton v. City of Roanoke, 204 Va. 678, 683-84 (1963).

In Birchfield, the United States Supreme Court held, among other things, that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense."[1] 136 S. Ct. at 2186. Accordingly, warrantless blood draws incident to arrest under an implied consent statute, which authorize criminal penalties upon refusal, violated the Fourth Amendment when there is no other exception to the warrant requirement such as exigency. Id. In response to the Court's ruling in Birchfield, the General Assembly of Virginia reenacted Code § 18.2-268.3 on March 16, 2017 to remove criminal penalties for unreasonable refusal.

On appeal in this case, Taylor argues that Birchfield required the trial court to grant his motion to suppress. In response, the Commonwealth argues Trooper Boelt acted in good faith reliance on well-established precedent in obtaining a blood sample from Taylor. As such, the exclusionary rule does not apply. We agree with the Commonwealth.

---

[1] In Birchfield, the United States Supreme Court actually considered three consolidated cases involving implied consent statutes that imposed criminal penalties on an arrested driver who refused to consent to testing. Birchfield, 136 S. Ct. at 2170-73. The three consolidated cases involved: (1) a driver prosecuted for refusing to submit to a breath test; (2) a driver prosecuted for refusing to submit to a blood test; and (3) a driver who consented to a blood test after being warned of criminal sanctions for test refusal and whose license was administratively suspended based on the blood test results. Id. at 2170-72. The Supreme Court held that the driver who refused to submit to a warrantless breath test could be criminally prosecuted for his refusal. Id. at 2186. The Court reversed the conviction of the driver prosecuted for refusing to consent to a blood test. Id. With respect to the driver on whom, like here, administrative sanctions were imposed after he consented to a blood test, the Court remanded the case for consideration of whether the driver's consent was voluntary, since the state court's ruling that the consent was voluntary was based on the erroneous assumption that the state could permissibly compel both blood and breath tests. Id. We note that on remand the state court declined to consider whether the consent was coerced. Beylund v. Levi, 889 N.W.2d 907, 917 (N.D.) (concluding specific statutory procedure for administrative license proceedings and the civil nature of those proceedings did not require exclusion of the results of the blood tests in the administrative proceedings), reh'g denied (Mar. 30, 2017). Thus, the issue presented here was not expressly decided by Birchfield.

This Court has "consistently held that when a law enforcement officer relies in good faith upon the constitutional standards in existence *at that time*, the exclusionary rule will not be implemented *ex post facto*." Reed v. Commonwealth, 69 Va. App. 332, 340 (2018). It is well-settled that "[a]n officer who conducts a search in reliance on binding appellate precedent does no more than 'ac[t] as a reasonable officer would and should act' under the circumstances. Davis v. United States, 564 U.S. 229, 241 (2011) (alteration in original) (quoting United States v. Leon, 468 U.S. 897, 920 (1984)). "The deterrent effect of exclusion in such a case can only be to discourage the officer from 'do[ing] his duty.'" Id. (alteration in original) (quoting Leon, 468 U.S. at 920). See also United States v. Peltier, 422 U.S. 531, 537 (1975) ("[I]f the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the imperative of judicial integrity is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner." (internal quotation marks omitted)).

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

Id. at 538-39 (quoting Michigan v. Tucker, 417 U.S. 433, 447 (1974)). "[T]he inquiry must be focused on the 'flagrancy of the police misconduct' at issue" and employ the "last resort" remedy of exclusion only when necessary "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Collins v. Commonwealth, ___ Va. ___, ___ (Mar. 28, 2019) (first quoting Davis v. United States, 564

U.S. 229, 238 (2011) (citation omitted); then quoting Herring v. United States, 555 U.S. 135, 140, 144 (2009) (citation omitted)). See also Heien v. North Carolina, 135 S. Ct. 530, 540 (2014) (holding that officer's reasonable mistake of law did not require suppression of evidence).

At the time Trooper Boelt arrested Taylor, the law in Virginia was that Taylor had, by driving on the highway, impliedly consented to provide a blood or breath sample after being arrested for driving while intoxicated.[2] If he refused to honor that implied consent, he faced a criminal conviction for the refusal because he had two prior DUI convictions. While it can be argued that Birchfield invalidated implied consent statutes that threaten criminal sanctions for refusing to provide a blood sample, Birchfield did not conclude that its holding should be applied retroactively. Therefore, Trooper Boelt was following the law as it existed at the time of the arrest. And there is no evidence in the record that Trooper Boelt engaged in willful or negligent conduct in obtaining the blood sample. See Peltier, 422 U.S. at 538-39. He was simply following the law as it existed at the time. Under these circumstances, we cannot fathom any deterrent purpose that would be served by excluding otherwise relevant evidence. Hudson v. Michigan, 547 U.S. 586, 596 (2006) ("[W]e must consider the deterrence benefits, [the] existence of which is a necessary condition for exclusion.").

Because Trooper Boelt acted in good faith reliance on established law, the trial court did not err in denying Taylor's motion to suppress the blood sample obtained by Trooper Boelt following Taylor's arrest for DUI.

---

[2] Prior to Birchfield and the arrest in this case, such implied consent laws were widely accepted. See Missouri v. McNeely, 569 U.S. 141, 161 (2013) ("[A]ll 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense."); South Dakota v. Neville, 459 U.S. 553, 560 (1983) (noting one-year license revocation "for refusing to take a blood-alcohol test is unquestionably legitimate").

2. Sufficiency of the Evidence

Taylor argues that even with the results of the blood sample being admitted into evidence, the evidence was insufficient to find him guilty of DUI, third offense. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Commonwealth v. Perkins, 295 Va. 323, 327 (2018) (alteration in original) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). This Court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Id. (quoting Williams v. Commonwealth, 278 Va. 190, 193 (2009)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (internal quotation marks omitted) (citation omitted).

Taylor was charged with driving a motor vehicle "while under the influence of alcohol or other self-administered intoxicants, and or drugs as described in 18.2-266 (i), (ii), (iii), and or (iv)."[3] Code § 18.2-269(A)(3) provides,

> If there was at [the time of the blood sample] 0.08 percent or more by weight by volume of alcohol in the accused's blood or 0.08 grams or more per 210 liters of the accused's breath, it shall be presumed that the accused was under the influence of alcohol intoxicants at the time of the alleged offense.

---

[3] We note that although the indictment lists (i), (ii), (iii), or (iv), the Commonwealth limited the indictment with the "while under the influence of alcohol or other self-administered intoxicants, and or drugs" language. As the Court noted in Purvy v. Commonwealth, 59 Va. App. 260, 268 (2011) (quoting Commonwealth v. Nuckles, 266 Va. 519, 523 (2003)), "Where the indictment includes, as here, specific, narrowing language 'descriptive of the offense charged,' we cannot treat it as immaterial 'surplusage.'" See also Etheridge v. Commonwealth, 210 Va. 328, 330 (1969). Thus, we consider this an indictment charging a violation of Code § 18.2-266(ii), driving "while such person is under the influence of alcohol" and do not consider whether Taylor violated the "per se" provisions of Code § 18.2-266(i).

Thus, if the Commonwealth proved that Taylor's blood alcohol content was above 0.08% at the time the sample was taken, then the factfinder may infer "that the accused was under the influence of alcohol intoxicants at the time of the alleged offense." Id. "Unless rebutted, however, the test results are sufficient to establish the blood alcohol concentration at the time of driving." Davis v. Commonwealth, 8 Va. App. 291, 298 (1989).

Here, the certificate of analysis with the results of Taylor's blood sample testing indicated that his blood alcohol content was 0.128% by weight by volume. Thus, the trial court could infer that Taylor was under the influence of alcohol intoxicants at the time of the offense—that is, when he was driving. Taylor did not offer any evidence to rebut the blood sample results. Accordingly, the Commonwealth proved that Taylor drove a "motor vehicle . . . (ii) while [he was] under the influence of alcohol." Additionally, the Commonwealth entered into evidence Taylor's Department of Motor Vehicles record, which established that Taylor had two prior convictions for DUI within ten years of the current offense. Therefore, the trial court did not err in finding the essential elements of DUI, third offense, beyond a reasonable doubt.

CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.