COURT OF APPEALS OF VIRGINIA

Present:    Judges Malveaux, Causey and Chaney
Argued by videoconference


DOMINIC ALEX NUNEZ

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0008-21-4                      JUDGE VERNIDA R. CHANEY
                                                          JUNE 21, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

Bret D. Lee for appellant.

Ken J. Baldassari, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Dominic Alex Nunez ("Nunez") appeals from the judgment of the Circuit Court of

Fairfax County ("trial court") convicting and sentencing him for misdemeanor driving while

intoxicated ("DWI"), first offense, in violation of Fairfax County Code § 82-1-6 (incorporating

Va. Code § 18.2-266). Nunez was sentenced to incarceration for ninety days, all suspended, and

a fine.

On appeal, Nunez contends that the trial court erred in (i) inferring his guilt from his

statement, "I fucked up," despite the trial court's finding that the vehicle was not in operation

when the police encountered him, (ii) convicting him where the evidence did not exclude the

reasonable hypothesis of innocence that Nunez's companion—not Nunez—drove the vehicle to

the place where the police encountered it, and (iii) convicting him where the evidence did not

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

exclude the reasonable hypothesis of innocence that he was not intoxicated at the time of any earlier driving. For the following reasons, this Court affirms the trial court's judgment.

## I. BACKGROUND[2]

### A. The DUI Investigation

On November 30, 2019, between midnight and 5:00 a.m., Officer Braedon Jewitt ("the officer") of the Fairfax County Police Department was dispatched with other officers to investigate a report of suspicious persons asleep in a car. The officer found the reported vehicle parked partially on the sidewalk of a public street. The officer discovered two people asleep inside the car. Nunez was asleep in the driver's seat, and his girlfriend was asleep in the front passenger seat.

Nunez's car was parked with the two right tires on the sidewalk and the two left tires in the travel lane of the street. The officer observed that the car's engine was off, the gearshift was in the drive position, and the headlights were on. The numbers on the car radio were illuminated, but the officer heard no sound from the radio. The officer placed his hand on the hood of the car and felt that it was warm, although it was a cold night. The officer smelled an odor of alcoholic beverage coming from the vehicle.

Nunez awoke and told the officer that he was attempting to drive himself and his girlfriend home. The officer testified at trial that Nunez "told me he was driving home[.]" Nunez agreed to step out of the car to do some tests.

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

Nunez attempted to perform field sobriety tests and agreed to provide a breath sample for a preliminary breath test ("PBT"). The officer asked Nunez, "Do you know what the legal limit in Virginia is?" Nunez replied, ".08. And I'm probably surpassed that."

Nunez asked the officer to tow his car so he could "go in an Uber." Nunez pleaded with the officer and stated, "I'll be honest with you. I fucked up. I fucked up." The officer responded, "Yeah man, you did." Nunez replied, "I did, I did, I did, I did. I believe it. I believe it." Then the officer informed Nunez that his PBT result was 0.11. Subsequently, the officer arrested Nunez for DWI.

At the police station, Nunez provided another breath sample for alcohol analysis. According to the "Certificate of Blood Alcohol Analysis"—which was admitted in evidence without objection—the breath sample's alcohol content was "0.19 grams per 210 liters of breath."

### B. The Trial Court's Findings

Nunez challenged the sufficiency of the evidence to support a DWI conviction in his closing argument at trial. Nunez contended that his admission that he attempted to drive home was not an admission that he drove the car to the location where the officer encountered him. Nunez argued that the evidence failed to exclude the hypothesis that his girlfriend was the one who drove the car and parked it where the officer encountered it. Nunez hypothesized that after his girlfriend parked the car, he moved to the driver's seat to attempt to drive home, but he never actually operated the car before falling asleep behind the steering wheel.

The trial court made the following findings on the record:

1. When the police first encountered Nunez, the car's engine was off and the headlights were on.

2. The make and model of the car are unknown, and the evidence does not establish whether a key was needed to start the car.

3. The evidence does not establish where the car keys were, and there was no evidence that Nunez had the car keys.

4. "The radio is not on because we don't hear any noise. All we know is that there's power to the radio because it's illuminated."

5. The dashboard was illuminated, but this was merely "default lighting" and did not prove "operation" of the vehicle.

6. The car gearshift was in drive, but this was not sufficient to prove "operation" of the car in the absence of evidence about any car keys.

7. The hood of the car was warm; therefore, the car was operated at some time prior to the arrival of the officer.

8. Nunez admitted to driving the vehicle.

9. "[B]ased on [Nunez's] statements and all the other circumstances, including the field sobriety test, the blood alcohol test, the breath test that he took, I find that he was guilty of the offense charged because I think his statements where he says, 'I fucked up,' and the admission of guilt in this case that he had been operating the vehicle."

10. "When it comes to the blood alcohol level, I've got a reasonable doubt on that point, so I'm going to find him guilty of the offense without the elevated BAC."

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

On appellate review of a criminal conviction, this Court "consider[s] the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." *Pooler v. Commonwealth*, 71 Va. App. 214, 218 (2019) (quoting *Williams v. Commonwealth*, 49 Va. App. 439, 442 (2007) (*en banc*)). The conviction will be affirmed "unless it is plainly wrong or without evidence to support it." *Sarka v. Commonwealth*, 73 Va. App. 56, 62 (2021) (quoting *Austin v. Commonwealth*, 60 Va. App. 60, 65 (2012)).

"[W]here a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused]." *Wright v. Commonwealth*, 292 Va. 386, 397 (2016) (alterations in original) (quoting *Commonwealth v. Smith*, 259 Va. 780, 782 (2000)). "[W]here, as here, a conviction is based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *Garland v. Commonwealth*, 225 Va. 182, 184 (1983) (quoting *Carter v. Commonwealth*, 223 Va. 528, 532 (1982)).

### B. Nunez's Admissions

Nunez alleges that the trial court erred by inferring his guilt from his statement, "I fucked up," despite the trial court's finding that the vehicle was not in operation when the police encountered him. Although Nunez's statement "I fucked up"—in isolation—cannot reasonably be interpreted as a specific admission or as a confession to DWI, this statement was not the only incriminating statement identified by the trial court, nor was it the sole basis for the trial court's finding that Nunez was guilty of DWI. Additionally, the trial court's finding that Nunez was not operating the car when the officer observed him does not undermine the DWI conviction because the trial court found that Nunez drove the car to the place where the officer encountered him.

In addition to Nunez's incriminating statement, "I fucked up," the trial court found that Nunez admitted that he had been driving the vehicle before the police arrived. The evidence supporting this finding includes the officer's testimony that Nunez said he was driving home and Nunez's recorded statement that he was trying to drive himself and his girlfriend home. Therefore, the trial court did not err in finding that Nunez admitted to driving the car.

Considering the context of Nunez's statement "I fucked up," a rational fact-finder could find this statement to be another admission that he had been driving. Nunez made this statement

- 5 -

while awaiting the result of his preliminary breath test and after stating that he "probably surpassed" the legal limit of 0.08. From Nunez's combined statements that his blood alcohol level probably exceeded the legal limit and that he "fucked up," a rational fact-finder could find that Nunez admitted to driving.

### C. Nunez's Hypotheses of Innocence

#### i. *Hypothesis That Nunez's Companion Was the Driver*

Nunez argues that the evidence failed to exclude the reasonable hypothesis of innocence that his companion drove the car to the place where the police encountered it. However, a rational fact-finder can reject a purported hypothesis of innocence as unreasonable if the evidence does not support it. In a circumstantial evidence case, the Commonwealth's burden is to exclude reasonable hypotheses of innocence that flow from the evidence. *See Case v. Commonwealth*, 63 Va. App. 14, 23 (2014). Here, there was no evidence that Nunez's companion had been driving and no evidence that they switched seats before the officer encountered them. The mere fact that another person was present in the car does not foreclose the common-sense inference that the person in the driver's seat was the driver. Therefore, a rational fact-finder could have rejected as unreasonable the hypothesis that Nunez's companion drove them to the place where the police encountered them.

Although the officer did not observe Nunez driving, the officer observed Nunez asleep behind the car's steering wheel while his companion was asleep in the passenger seat. The hood of the car was warm on that cold night, indicating that the car was recently driven to the place where the officer observed it. In conjunction with Nunez's statement that he was driving home, these facts support a finding that Nunez is the one who drove the car and parked it where the officer encountered it. Therefore, the trial court did not err in finding that Nunez—not his companion—was the driver.

ii. *Hypothesis that Nunez Was Not Intoxicated at the Time of Any Earlier Driving*

Assuming *arguendo* that he had been driving before the police encountered him, Nunez argues that the evidence failed to exclude the reasonable hypothesis of innocence that he was not intoxicated at the time of such driving. Nunez does not dispute that he was intoxicated when the officer encountered him.

The circumstantial evidence that Nunez was intoxicated while he was driving includes the following:

- The warm car hood in the cold outdoor temperature is circumstantial evidence that the car was recently driven and parked where the officer observed it.

- The car was parked with the two right tires on the sidewalk and the two left tires in the lane of traffic.

- No beverage containers were observed in or around the car, nor is there any other evidence that Nunez consumed alcohol after the car was parked.

Additionally, the certificate of analysis—which was admitted in evidence without objection—showed that the alcohol content of Nunez's breath sample was "0.19 grams per 210 liters of breath." Pursuant to Code § 18.2-269, if the certificate of analysis indicates that the alcohol content of the defendant's breath sample is 0.08 grams or more per 210 liters of the defendant's breath, "it shall be presumed that the accused was under the influence of alcohol intoxicants *at the time of the alleged offense*." Code § 18.2-269(A)(3) (emphasis added). This statute has been construed "as creating a permissive inference" that the fact-finder is free to accept or reject. *Yap v. Commonwealth*, 49 Va. App. 622, 636-37 (2007). Code § 18.2-269 shifts the burden of producing evidence to the defendant, while the burden of proof remains with the Commonwealth. *Yap*, 49 Va. App. at 636. Here, Nunez produced no evidence related to the timing of his alcohol consumption and intoxication. Therefore, the trial court was permitted to infer that Nunez was under the influence of alcohol at the time he was driving. *See Taylor v. Commonwealth*, 70 Va. App. 182, 192 (2019). Thus, this Court cannot conclude that no

reasonable fact-finder, upon consideration of all the evidence, could have rejected Nunez's hypothesis that Nunez was not intoxicated while he was driving.

III.  CONCLUSION

The evidence is sufficient to sustain Nunez's conviction for DWI, first offense, in violation of Fairfax County Code § 82-1-6 (incorporating Va. Code § 18.2-266).  Accordingly, this Court affirms the trial court's judgment.

Pursuant to Code § 8.01-428(B), this Court remands this matter to the trial court to correct clerical mistakes in the trial court's final order by removing all references to "BAC .15-.20%," except in the first paragraph, which states the charge upon which Nunez was tried, and by removing references to Code § 18.2-270.[3]  Upon correcting the clerical mistakes in the final order, the trial court is further ordered to direct the clerk of the Fairfax County Circuit Court to transmit certified copies of the corrected final order to the parties, to the Virginia Department of Motor Vehicles, and to any others that need the corrected information, as determined by the trial court.

*Affirmed.*

---

[3] The warrant charging Nunez with DWI also alleged that "[t]he blood alcohol level of the accused was at least 0.15 but not more than 0.20."  The trial court found that "[w]hen it comes to the blood alcohol level, I've got a reasonable doubt on that point, so I'm going to find him guilty of the offense without the elevated BAC."  However, due to apparent clerical mistakes, the trial court's final order erroneously states that Nunez was found "guilty of driving while intoxicated, first offense, BAC .15-.20%, as charged in the warrant."  The trial court is authorized to correct such clerical mistakes pursuant to Code § 8.01-428(B).